**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| NATIONSTAR MORTGAGE LLC,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>AMBER HILLS II HOMEOWNERS ASSOCIATION, INC.,<br><br>　　　　　　　Defendant. | Case No. 2:15-cv-01433-APG-CWH<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Dkt. #12, #18) |

　　　　This case arises out of a dispute over whether a foreclosure sale conducted by a homeowners association ("HOA") extinguished the first deed of trust on property located at 9580 W. Reno Ave, #276 in Las Vegas.  Nationstar sues to quiet title and for a declaration that the HOA sale did not extinguish the first deed of trust.  Among other things, Nationstar argues the HOA sale is void because Nevada Revised Statutes ("NRS") Chapter 116 violates due process.  Nationstar also brings claims for wrongful foreclosure and for breach of NRS § 116.1113.

　　　　Amber Hills moves to dismiss Nationstar's claims for lack of standing, as untimely, and for failure to state a claim.  Nationstar moves for summary judgment on the basis that NRS Chapter 116 is unconstitutional both facially and as applied in this case.

　　　　I grant in part the motion to dismiss.  I dismiss Nationstar's wrongful foreclosure and breach of § 116.1113 claims as time-barred.  I dismiss Nationstar's request for special damages because Nationstar did not oppose dismissal.  I dismiss those portions of Nationstar's quiet title claim that rest on the due process clause because NRS Chapter 116 is not unconstitutional, facially or as applied in this case.  For these same reasons, I deny Nationstar's summary judgment motion based on due process.  I deny the remainder of Amber Hills' motion to dismiss because Nationstar has standing, its quiet title claim is not time-barred, and it states a claim for quiet title on the ground that the HOA sale should be set aside as commercially unreasonable.

## I. BACKGROUND

In December 2005, Rajinder Tumber obtained a loan in the amount of $182,400.00 from Countrywide Home Loans, Inc., that was secured by a deed of trust encumbering the subject property. (Dkt. #1 at 3; Dkt. #17-1.) In August 2011, defendant Amber Hills, through its agent Absolute Collection Services, LLC ("ACS"), recorded a notice of delinquent assessment lien after Tumber failed to pay his HOA dues. (Dkt. #1 at 4; Dkt. #17-4.) That notice stated the amount due to the HOA was $3,222.47. (Dkt. #1 at 4; Dkt. #17-4.) Countrywide assigned the deed of trust to U.S. Bank, N.A. on October 12, 2011. (Dkt. #1 at 3; Dkt. #17-2.) About two weeks later, ACS recorded a notice of default and election to sell based on the delinquent assessment lien, stating that the amount due to Amber Hills was $4,362.11. (Dkt. #1 at 4; Dkt. #17-5.)

On December 2, 2011, Mortgage Electronic Registration Systems, Inc. ("MERS"), acting on behalf of U.S. Bank, contacted ACS and requested a ledger identifying the superpriority amount owed to Amber Hills so that it could satisfy that amount. (Dkt. #1 at 5.) About a week later, ACS responded and refused to provide a ledger or a superpriority amount. (*Id.*) According to the complaint, ACS "stated that its interpretation of the applicable NRS is that the super-priority payoff does not come into play until the lender forecloses on the property in question." (*Id.*)

On February 27, 2012, ACS recorded a notice of trustee's sale scheduled for April 17, 2012, stating that the amount due was $6,341.39. (Dkt. #1 at 4; Dkt. #17-6.) The sale took place on May 15, 2012 and Amber Hills purchased the property for $7,400.00. (Dkt. #1 at 5-6; Dkt. #17-7.)

The deed of trust was assigned to Nationstar in October 2013. (Dkt. #1 at 3; Dkt. #17-3.) Nationstar alleges that Tumber has defaulted on the amounts due on the loan and Nationstar intends to foreclose. (Dkt. #1 at 4.) However, Nationstar brings this action to determine the parties' respective rights in the property in light of the prior HOA foreclosure sale.

Nationstar asserts three claims in its complaint.[1]  First, it seeks to quiet title and requests declaratory relief regarding whether the HOA foreclosure sale extinguished the first deed of trust. (*Id.* at 6.)  Nationstar alleges the HOA sale did not extinguish the first deed of trust because NRS Chapter 116 violates due process, Nationstar's predecessor tried to tender the superpriority amount but ACS obstructed that effort, the HOA's sale was commercially unreasonable, and Amber Hills is not a bona fide purchaser for value. (*Id.* at 6-9.)  Second, Nationstar asserts Amber Hills breached the duty of good faith imposed by NRS § 116.1113 by not identifying the superpriority amount, not notifying Nationstar's predecessor that its security interest was at risk, and by obstructing the attempted tender. (*Id.* at 9-10.)  Third, Nationstar asserts a wrongful foreclosure claim. (*Id.* at 10-11.)

Amber Hills moves to dismiss the complaint.[2]  First, it contends Nationstar lacks standing because Nationstar did not own an interest in the property at the time of the HOA sale and Nationstar was not assigned the first deed of trust until after the HOA foreclosure sale had already extinguished it.  Second, Amber Hills argues all of Nationstar's claims are barred by the statute of limitations or laches.  Finally, Amber Hills contends Nationstar's complaint fails to state a claim. Nationstar moves for summary judgment, arguing NRS Chapter 116 violates due process, both facially and as applied.

**II. ANALYSIS**

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  However, I do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual

---

[1] Nationstar asserts a fourth "claim" for injunctive relief to prevent Amber Hills from selling the property until the parties' rights are determined. (Dkt. #1 at 11-12.)  Because injunctive relief is a remedy and not an independent claim for relief, I will not address it separately from Nationstar's other claims.

[2] Amber Hills contends Nationstar failed to advise the Nevada Attorney General of the constitutional challenges to NRS Chapter 116 so I should not consider Nationstar's due process arguments.  However, Nationstar served the complaint on the Nevada Attorney General. (Dkt. #9.)  The court also notified the Nevada Attorney General. (Dkt. Nos. 28-30.)  Because I reject the constitutional challenges, I need not await the Nevada Attorney General's intervention decision. Fed. R. Civ. P. 5.1(c).

allegations in the complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

### A. Standing

Amber Hills argues that Nationstar lacks standing because (1) Nationstar did not own a property interest at the time of the HOA sale and (2) the HOA sale extinguished the first deed of trust so Nationstar received nothing by way of the assignment. Nationstar responds that the HOA sale did not extinguish the deed of trust and therefore it has standing.

To establish standing under Article III of the Constitution, Nationstar must demonstrate: (1) an injury-in-fact; (2) a causal connection between the injury and "the conduct complained of;" and (3) that a favorable decision likely would redress the injury-in-fact. *Barnum Timber Co. v. U.S. E.P.A.*, 633 F.3d 894, 897 (9th Cir. 2011). Nationstar has met this burden. Nationstar alleges the parties dispute whether its deed of trust was extinguished by the HOA foreclosure sale and it seeks a judicial declaration to protect its interest. Amber Hills' position that the deed of trust was eliminated before it was transferred to Nationstar assumes the HOA sale extinguished that interest, which is the very dispute Nationstar seeks to resolve through this lawsuit. I therefore deny Amber Hills' motion to dismiss for lack of standing.

### B. Statute of Limitations/Laches

Amber Hills contends that each of Nationstar's claims rests on an allegation that Amber Hills violated NRS Chapter 116, and thus Nationstar's claims are barred by NRS § 11.190(3), which requires that a claim based on liability created by statute be brought within three years. Amber Hills also argues that Nationstar's facial challenge to Chapter 116 under the due process clause is time-barred because the limitations period on a facial attack runs from the date of enactment, and NRS Chapter 116 was enacted in 1991. Finally, Amber Hills contends Nationstar's quiet title claim is barred by laches.

4

Nationstar responds that § 11.190(3) does not apply because Nationstar is not seeking to impose civil liability on the HOA. Rather, it seeks a declaration that the HOA sale did not eliminate the deed of trust. Nationstar thus contends its request for declaratory relief is not subject to a limitations period because it is in the nature of a defense. Nationstar also argues its facial constitutional challenge is not time-barred because its cause of action did not accrue until many years after the statute was enacted, when Nationstar was actually deprived of due process.

### 1. Quiet Title

Count one of the complaint seeks to quiet title through a declaration that the HOA foreclosure sale did not extinguish the deed of trust. (Dkt. #1 at 6-9.) Among the reasons Nationstar offers for why the HOA sale did not extinguish the deed of trust are that Chapter 116 is facially unconstitutional, Chapter 116 as applied would violate Nationstar's due process rights, and the sale was commercially unreasonable. (*Id.*) Amber Hills contends this claim is untimely because a facial constitutional challenge is ripe when the statute is first enacted. Nationstar responds that its due process challenge did not accrue until the alleged procedural defect impacted Nationstar.

Although the parties dispute when a facial constitutional challenge is timely,[3] Nationstar's claim is to quiet title, not a constitutional claim under 42 U.S.C. § 1983. Under NRS § 40.010, an "action may be brought by any person against another who claims an estate or interest in real

---

[3] Amber Hills relies on cases under 42 U.S.C. § 1983 analyzing when facial takings and analogous substantive due process claims accrue to argue that a facial procedural due process challenge accrues upon enactment of the challenged statute. As explained by the Ninth Circuit in *Levald, Inc. v. City of Palm Desert*, there are "differences between a statute that effects a taking and a statute that inflicts some other kind of harm:"

> In other contexts, the harm inflicted by the statute is continuing, or does not occur until the statute is enforced—in other words, until it is applied. In the takings context, the basis of a facial challenge is that the very enactment of the statute has reduced the value of the property or has effected a transfer of a property interest. This is a single harm, measurable and compensable when the statute is passed. Thus, it is not inconsistent to say that different rules adhere in the facial takings context and other contexts.

998 F.2d 680, 688 (9th Cir. 1993). The same is not necessarily true for a procedural due process claim. Specifically here, Nationstar does not allege that its procedural due process rights were violated upon the very enactment of Chapter 116.

5

property, adverse to the person bringing the action, for the purpose of determining such adverse claim." Thus, any person claiming an interest in the property may seek to determine adverse claims, even if that person does not have title to or possession of the property. A quiet title claim is subject to the five-year limitations period in NRS § 11.070:

> No cause of action or defense to an action, founded upon the title to real property, or to rents or to services out of the same, shall be effectual, unless it appears that the person prosecuting the action or making the defense, or under whose title the action is prosecuted or the defense is made, or the ancestor, predecessor, or grantor of such person, was seized or possessed of the premises in question within 5 years before the committing of the act in respect to which said action is prosecuted or defense made.

Nationstar and its predecessors were neither "seized" nor "possessed" of the premises by virtue of the deed of trust. However, reading sections 40.010 and 11.070 together, § 40.010 allows anyone with an interest in the property to sue to determine adverse claims, and § 11.070 provides the corresponding limitations period for such claims. Because Nationstar brought its action within five years of possessing an interest in the property, its quiet title claim is timely.

Even if this analysis is incorrect and Nationstar's quiet title claim is an equitable claim governed by laches rather than by the limitations period in § 11.070, laches does not support dismissal. *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002) (stating that laches is "an equitable defense . . . distinct from the statute of limitations" that "serves as the counterpart to the statute of limitations, barring untimely equitable causes of action"); *Shadow Wood HOA v. N.Y. Cmty. Bancorp*, No. 63180, --- P.3d ----, 2016 WL 347979, at *5 (Nev. 2016) (en banc) (stating that a person seeking to quiet title under § 40.010 may invoke the court's equitable powers to resolve competing claims to title). "Laches is an equitable time limitation on a party's right to bring suit, . . . resting on the maxim that one who seeks the help of a court of equity must not sleep on his rights." *Jarrow Formulas, Inc.*, 304 F.3d at 835 (quotations and internal citation omitted). The "laches determination is made with reference to the limitations period for the analogous action at law. If the plaintiff filed suit within the analogous limitations period, the strong presumption is that laches is inapplicable." *Id.* Laches is

6

an affirmative defense that "requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *In re Beaty*, 306 F.3d 914, 926 (9th Cir. 2002).

As stated above, § 11.070 is the analogous limitations period for a claim disputing title to property. Thus, laches presumptively does not bar Nationstar's quiet title claim because it filed suit within five years of possessing an interest in the property. The complaint's allegations suggest the delay by Nationstar and its predecessors resulted from the confusion in the law and ACS's representation that the superpriority amount would not be paid off, rather than from a lack of diligence. Further, although Amber Hills contends it will be prejudiced, Amber Hills has not identified any evidentiary prejudice it may suffer by allowing the claim to proceed. I therefore decline to dismiss the quiet title claim on the basis of laches.

### 2. Breach of NRS § 116.1113

Count two of the complaint alleges Amber Hills violated § 116.1113, which imposes an obligation of good faith in every contract or duty governed by Chapter 116. (Dkt. #1 at 9-10.) Nationstar seeks as relief for this claim damages in the amount of either the property's fair market value or the unpaid principal on the loan as of the date of the HOA sale. (*Id.* at 10.) Because this is a claim for damages based on the alleged breach of a statutory duty, it must be brought within three years. *See* Nev. Rev. Stat. § 11.190(3)(a). The HOA sale took place on May 15, 2012. (Dkt. #1 at 5.) Nationstar brought this lawsuit more than three years later, on July 28, 2015. I therefore dismiss this claim as time-barred.

### 3. Wrongful Foreclosure

Count three of the complaint alleges Amber Hills' foreclosure sale was wrongful because the HOA failed to give proper notice, the prior lender attempted to tender the superpriority amount but was rebuffed, and Amber Hills violated § 116.3111's requirement of good faith. (*Id.* at 10-11.) Nationstar seeks damages in the amount of the property's fair market value or the unpaid principal loan balance as of the time of the HOA sale. (*Id.* at 11.)

////

A tortious wrongful foreclosure claim "challenges the authority behind the foreclosure, not the foreclosure act itself." *McKnight Family, L.L.P. v. Adept Mgmt.*, 310 P.3d 555, 559 (Nev. 2013) (en banc). Because Amber Hills' authority to foreclose in the manner it did arises from Chapter 116, Nationstar's claim essentially is for damages based on liability created by a statute. This claim is therefore time-barred under § 11.190(3)(a) because it was not brought within three years.[4]

### C. Failure to State a Claim

Amber Hills moves to dismiss several claims for failure to state a claim. Specifically, Amber Hills contends (1) Nationstar's facial attack of Chapter 116 fails because Amber Hills is not a state actor and because the statute does not violate due process; (2) the HOA notices did not have to identify the superpriority amount; and (3) Chapter 116 does not contain a commercial reasonableness requirement but the HOA sale nevertheless was commercially reasonable.

Nationstar responds that Chapter 116 is facially unconstitutional because, at the time of the HOA sale, it did not require notice to the first deed of trust holder.[5] Nationstar also argues Chapter 116 is unconstitutional as applied here because ACS refused to provide Nationstar's predecessor with notice that a superpriority lien was being foreclosed and the superpriority amount. Nationstar also contends Chapter 116 violates due process as applied because Nationstar's predecessor had no statutory cause of action to challenge the HOA foreclosure proceedings. Finally, Nationstar contends the HOA sale was not commercially reasonable. Nationstar moves for summary judgment on the alleged due process violations.

### 1. Due Process Facial Attack Based on "Opt-In" Provisions

Nationstar contends Chapter 116 violates due process because it does not require the HOA to give the first deed of trust holder notice of the HOA's foreclosure sale. As more fully

---

[4] Even if Nationstar's claims for breach of § 116.1113 and wrongful foreclosure were timely, I would dismiss them under NRS § 38.310. *See Nationstar Mortgage, LLC v. Sundance Homeowners Association*, 2:15-cv-01310-APG-GWF, Dkt. #34 at 5-8 (D. Nev. Mar. 30, 2016).

[5] Nationstar challenges the version of Chapter 116 that was in effect when the HOA sale took place in May 2012. Accordingly, all references to Chapter 116 and the statutory provisions within that chapter are to the 2012 version unless otherwise noted.

8

explained in *Las Vegas Development Group v. Yfantis*, No. 2:15-cv-01127-APG-CWH, Dkt. #72 (D. Nev. Mar. 24, 2016), Chapter 116 does not violate due process because it mandates notice to the first deed of trust holder. I therefore grant Amber Hills' motion to dismiss this portion of Nationstar's quiet title claim and deny Nationstar's countermotion for summary judgment on this issue.

### 2. Due Process As Applied

Nationstar contends Chapter 116 violates due process as applied because procedural due process requires that the deed of trust holder be given actual notice. Nationstar argues the statute does not require the HOA's notices to identify whether there is a superpriority lien being foreclosed and, if so, the amount of that lien so the deed of trust holder does not know whether its interest is at risk. Nationstar also asserts that neither the statute nor the notices advise how Nationstar could pay off the superpriority lien.

Amber Hills responds that the Supreme Court of Nevada has already determined in *SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d 408, 418 (Nev. 2014) (en banc) that the notices do not need to specify the superpriority amount because the notices are sent to all junior lienholders as well as the property owner, and thus a notice listing the full amount owed on the HOA lien is proper. Amber Hills also contends *SFR* already determined that deed of trust holders could have paid the entire lien to protect their interests and then sought a refund. Finally, Amber Hills argues it is not a government actor so there is no due process violation.

To state a procedural due process claim, Nationstar must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). A deed of trust is a property interest under Nevada law. *See* Nev. Rev. Stat. § 107.020, *et seq.*; *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983) (stating that "a mortgagee possesses a substantial property interest that is significantly affected by a tax sale"). The question therefore is whether Chapter 116 provides adequate procedural protections. "The fundamental requirements of procedural Due Process are notice and an opportunity to be heard

1  . . . ." *Conner v. City of Santa Ana*, 897 F.2d 1487, 1492 (9th Cir. 1990) (citing *Mathews v.*
2  *Eldridge*, 424 U.S. 319, 333 (1976)).

3                          *a. Notice*

4       Due process does not require actual notice. *Jones v. Flowers*, 547 U.S. 220, 226 (2006).
5  Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested
6  parties of the pendency of the action and afford them an opportunity to present their objections."
7  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Notice must (1) be
8  provided through means that might reasonably be used by a person "desirous of actually
9  informing" the recipient; (2) "afford a reasonable time for those interested to make their
10 appearance;" and (3) be of "such nature as reasonably to convey the required information." *Id.* at
11 314-15. "[I]f with due regard for the practicalities and peculiarities of the case these conditions
12 are reasonably met[, then] the constitutional requirements are satisfied." *Id.* "The criterion is not
13 the possibility of conceivable injury, but the just and reasonable character of the requirements,
14 having reference to the subject with which the statute deals." *Id.* at 315 (quotation omitted).

15      "[A]ssessing the adequacy of a particular form of notice requires balancing the interest of
16 the State against the individual interest sought to be protected by the Fourteenth Amendment."
17 *Jones*, 547 U.S. at 229 (quotation omitted). Determining what notice is required "will vary with
18 circumstances and conditions." *Id.* at 226 (quotation omitted); *Taylor v. San Diego Cnty.*, 800
19 F.3d 1164, 1171 (9th Cir. 2015) ("Due process is a flexible standard requiring such "procedural
20 protections as the particular situation demands[.]") (quotation omitted).

21      Here, the means provided was mailing the notices of default and of sale. *See* Nev. Rev.
22 Stat. §§ 116.31163(1), (2), 116.311635(1)(b), 116.31168(1), 107.090. Use of the mails
23 repeatedly has been approved as satisfying due process. *See Jones*, 547 U.S. at 234; *Mullane*, 339
24 U.S. at 319.

25      Nationstar does not contend that it was not afforded a reasonable time in which to make
26 an appearance. The statute required the HOA to record and mail a notice of default and election
27 to sell and then allow 90 days to lapse before the HOA must record a notice of sale. Nev. Rev.
28

Stat. §§ 116.31163(1)(b), (2).  Before conducting the sale, at least 20 days (and usually another three weeks) must pass before the HOA may conduct the sale. *Id.* § 116.311635(1)(a) (incorporating NRS § 21.130).  As discussed more fully in *Las Vegas Development Group*, the notices of default and sale must be sent to the deed of trust holder.  The deed of trust holder thus is afforded a reasonable time in which to appear.

The crux of Nationstar's due process challenge thus centers on whether the notices reasonably conveyed the required information where the notices did not indicate (a) whether a superpriority lien was being foreclosed, (b) the amount of that lien, and (c) how a deed of trust holder could satisfy it to stave off foreclosure and preserve its security interest.

The statute requires the HOA's notice of default to "[d]escribe the deficiency in payment," provide the name and address of the person authorized to enforce the lien by sale, and give the following warning:

> WARNING!  IF YOU FAIL TO PAY THE AMOUNT SPECIFIED IN THIS NOTICE, YOU COULD LOSE YOUR HOME, EVEN IF THE AMOUNT IS IN DISPUTE!

Nev. Rev. Stat. § 116.31162(1)(b)(3).  The notice of sale likewise must state "[t]he amount necessary to satisfy the lien as of the date of the proposed sale" and the following warning:

> WARNING! A SALE OF YOUR PROPERTY IS IMMINENT!  UNLESS YOU PAY THE AMOUNT SPECIFIED IN THIS NOTICE BEFORE THE SALE DATE, YOU COULD LOSE YOUR HOME, EVEN IF THE AMOUNT IS IN DISPUTE.  YOU MUST ACT BEFORE THE SALE DATE.  IF YOU HAVE ANY QUESTIONS, PLEASE CALL (name and telephone number of the contact person for the association).  IF YOU NEED ASSISTANCE, PLEASE CALL THE FORECLOSURE SECTION OF THE OMBUDSMAN'S OFFICE, NEVADA REAL ESTATE DIVISION, AT (toll-free telephone number designated by the Division) IMMEDIATELY.

Nev. Rev. Stat. § 116.311635(3)(b).  The notice thus requires the HOA to notify interested persons that it is foreclosing and to provide the deficiency amount and contact information so that the deficiency may be cured.

This information, combined with the statutory scheme's priority provision, is reasonably calculated to provide lienholders with notice of the pendency of nonjudicial foreclosure

proceedings that may extinguish their security interests. The fact that a notice does not identify a superpriority amount is of no consequence because Chapter 116 gives lienholders notice that the HOA may have a superpriority interest that could extinguish their security interests. *See SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d 408, 418 (Nev. 2014) (en banc)[6]; *cf. Matter of Gregory*, 705 F.2d 1118, 1123 (9th Cir. 1983) ("When the holder of a large, unsecured claim . . . receives any notice from the bankruptcy court that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril."). "[D]ue process is not offended by requiring a person with actual, timely knowledge of an event that may affect a right to exercise due diligence and take necessary steps to preserve that right." *In re Medaglia*, 52 F.3d 451, 455 (2d Cir. 1995). The notices give lienholders sufficient notice that their security interests may be at risk and they should take steps to inquire and protect themselves. This satisfies due process.

Furthermore, Nationstar's contention that a deed of trust holder does not know whether its security interest is in jeopardy when an HOA forecloses is belied by the actions of its predecessor in this case. Upon receiving the notice of default, Nationstar's predecessor, through MERS, contacted the HOA's agent, ACS, and requested a ledger to determine the superpriority amount. Thus, Nationstar's predecessor understood that its security interest was in jeopardy and took steps to protect that interest. ACS allegedly (1) refused to provide the superpriority amount and (2) told MERS the superpriority lien payoff would not occur until the lender foreclosed. ACS's post-notice conduct in this particular case does not render Chapter 116's statutory notice provisions unconstitutional. These allegations may support an equitable reason to set aside the HOA sale in

---

[6] The Supreme Court of Nevada rejected the argument that the notices must provide the superpriority amount in part because "[t]he notices went to the homeowner and other junior lienholders, not just U.S. Bank, so it was appropriate to state the total amount of the lien." *SFR Investments Pool 1*, 334 P.3d at 418. The Supreme Court of Nevada's ruling that Chapter 116 does not violate due process is not binding authority on my determination of whether Chapter 116 violates the due process clause of the United States Constitution, but it is persuasive authority. *Taylor*, 800 F.3d at 1171; *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1286 n.3 (9th Cir. 1977). The notices presumably could specify both the superpriority amount and the total lien amount. Nevertheless, the notices adequately apprised Nationstar's predecessor that its interest was at risk and Nationstar's predecessor had a meaningful opportunity to protect that interest.

this case, as discussed below. But they do not show that the statutory notice provisions fail to satisfy due process.[7]

### b. Opportunity to be Heard

In *SFR*, the Supreme Court of Nevada held there was no due process violation where the HOA's notices did not identify the superpriority amount, in part because the deed of trust holder could either (1) determine and satisfy the superpriority amount in advance of the sale or (2) pay the entire amount of the HOA's lien and request a refund of the balance exceeding the superpriority amount. *SFR Investments Pool 1*, 334 P.3d at 418. Nationstar argues that these two options do not satisfy due process because nothing in Chapter 116 required ACS to identify the amount or to accept satisfaction of that amount, and there is no clear and certain remedy by which to obtain a refund if the deed of trust holder pays the entire lien amount under duress and then seeks a refund.

As an initial matter, these are not the only two options for a lienholder. It could attend the statutorily-required public auction and purchase the property. Additionally, if the HOA or its agent refuses to provide the superpriority lien amount or to accept payment, the lienholder could sue for a declaration of the superpriority amount and to require the HOA to accept that amount in satisfaction of the superpriority lien. Thus, there are numerous avenues by which Nationstar's predecessor could have sought to protect its interest.

Moreover, as the Supreme Court of Nevada noted, the deed of trust holder can pay the entire lien amount and then sue for a refund. Nationstar relies on *McKesson Corp. v. Florida*, 496 U.S. 18 (1990), to argue that if a state scheme requires a party to pay a disputed amount under duress and then seek post-payment relief, the state must provide a "clear and certain remedy" for

---

[7] The Nevada Legislature's subsequent amendment of Chapter 116 does not establish that the prior version was unconstitutional. *See, e.g.*, *Dusenbery v. United States*, 534 U.S. 161 172 (2002) ("[O]ur cases have never held that improvements in the reliability of new procedures necessarily demonstrate the infirmity of those that were replaced."); *Kalchstein on Behalf of Kalchstein v. Sullivan*, 758 F. Supp. 836, 839 (E.D.N.Y. 1991) ("[T]he mere fact that a particular statute is subsequently amended is not tantamount to a finding that it was unconstitutional prior to its amendment.").

13

the overpayment challenge. Nationstar contends no such clear and certain remedy exists in NRS Chapter 116, so the statutory scheme violates due process.

In *McKesson*, the state of Florida imposed an excise tax on liquor. 496 U.S. at 22-23. The plaintiff paid the tax but challenged it as a violation of the Commerce Clause and requested a refund. *Id.* at 23-24. When the state refused to issue a refund, the plaintiff sued for a declaration that the tax was unconstitutional, for prospective injunctive relief, and for a refund of taxes already paid. *Id.* at 24-25. The Florida courts ruled the tax was unconstitutional and enjoined the tax prospectively but refused to award a refund, reasoning that the tax was collected in good faith and a refund would be a windfall where the plaintiff likely passed on the tax to its customers. *Id.* at 25-26. The plaintiff appealed to the United States Supreme Court, arguing that its due process rights were violated by having to pay an unconstitutional tax up front yet being denied a refund where the tax was later found to be unconstitutional. The Supreme Court agreed with the plaintiff:

> [I]f a State penalizes taxpayers for failure to remit their taxes in timely fashion, thus requiring them to pay first and obtain review of the tax's validity later in a refund action, the Due Process Clause requires the State to afford taxpayers a meaningful opportunity to secure postpayment relief for taxes already paid pursuant to a tax scheme ultimately found unconstitutional.

*Id.* at 22. Florida could have opted to provide predeprivation procedures that would allow a taxpayer to challenge the tax before paying. *Id.* at 36-37. But because Florida required taxpayers to pay first and challenge later, under pain of penalties, then Florida "must provide taxpayers with, not only a fair opportunity to challenge the accuracy and legal validity of their tax obligation, but also a clear and certain remedy for any erroneous or unlawful tax collection to ensure that the opportunity to contest the tax is a meaningful one." *Id.* at 39 (internal quotation and citations omitted).

*McKesson* does not control here. Unlike Florida's tax law, nothing in Nevada law requires the deed of trust holder to pay the entire HOA lien amount and then seek a refund. *SFR* suggested this as one option, but neither *SFR* nor Chapter 116 requires it. There is no basis to conclude that every HOA will reject an offer to pay the superpriority amount as ACS allegedly

14

1  did here on behalf of Amber Hills. Thus, contacting the HOA to request the payoff amount

2  remains an option for a deed of trust holder seeking to protect its interest. Further, the "clear and

3  certain remedy" *McKesson* refers to is a refund. *See id.* at 32-36 (citing cases where the remedy

4  was a court-ordered refund). Deed of trust holders have that remedy in Nevada because they can

5  sue an HOA for a refund. The problem in *McKesson* was not that there was no procedure to

6  obtain a refund, it was that despite requiring a taxpayer to prepay an unconstitutional tax, the state

7  courts nevertheless refused to award a refund. Nothing suggests that Nevada courts would refuse

8  to award a refund if deed of trust holders prepaid the full HOA lien amount and then sued for

9  reimbursement if the HOA did not voluntarily return overpayments.[8] Lienholders therefore have

10 meaningful opportunities to preserve their interests and Chapter 116 does not violate due process.

11      In sum, due process does not require an HOA to state the superpriority amount in the

12 foreclosure notice and lienholders have meaningful opportunities to preserve their interests in the

13 property. Chapter 116 therefore does not violate due process facially or as applied. Accordingly,

14 I grant Amber Hills' motion to dismiss this portion of Nationstar's quiet title claim and deny

15 Nationstar's motion for summary judgment.[9]

16           3.  Commercial Reasonableness

17      Amber Hills argues the complaint's allegations regarding tender do not support setting

18 aside the sale because there is no allegation MERS offered to pay the lien or actually tendered

19 payment. Amber Hills also argues Chapter 116 does not include a commercial reasonableness

20 requirement. According to Amber Hills, even if there is a commercial reasonableness

21 requirement, inadequacy of price alone will not suffice to set aside the sale.

---

23 [8] Nationstar contends that Nevada courts may interpret payment of the entire lien as a voluntary business decision that does not entitle the deed of trust holder to a refund. For this proposition, Nationstar cites the
24 Report of the Joint Editorial Board of the Uniform Law Commission, The Six Month "Limited Priority Lien" for Association Fees Under the Uniform Common Interest Ownership Act, pgs. 14-15 (July 1, 2013)
25 ("Report"). (Dkt. #18 at 9.) However, the Report referred to payment being a voluntary business decision where the lender pays the full lien amount after being contacted by the HOA but before the HOA or the
26 lender had initiated foreclosure proceedings. Report at 14-15. In that situation, the Report authors opined that the lender was not compelled to make the payment to protect its priority interest. *Id.* Here, the HOA
27 had initiated foreclosure proceedings, so that example would not apply.

28 [9] I therefore need not address the parties' arguments about whether Amber Hills is a state actor.

Nationstar responds that NRS § 116.1113 imposes a good faith duty on the HOA. Nationstar argues there is evidence of unfairness or oppression because ACS told Nationstar's predecessor that it was not paying off the superpriority lien. Nationstar contends questions surrounding the sale combined with the inadequate price will support setting aside the sale.

The Supreme Court of Nevada recently clarified that under Nevada law, "courts retain the power to grant equitable relief from a defective [HOA] foreclosure sale when appropriate . . . ." *Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp, Inc.*, No. 63180, --- P.3d ----, 2016 WL 347979, at *5 (Nev. Jan. 28, 2016) (en banc). Because Nationstar seeks to quiet title in itself, it bears the burden of demonstrating there are sufficient grounds to justify setting aside the HOA foreclosure sale. *Id.* at *6 (stating "the burden of proof rests with the party seeking to quiet title in its favor"). "[D]emonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id.* (citing *Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982)). In considering whether equity supports setting aside the sale, I also should consider any other factor bearing on the equities, including the actions or inactions of the party that seeks to set aside the sale and the impact on a bona fide purchaser for value. *Id.* at *8-9 (stating that "courts must consider the entirety of the circumstances that bear upon the equities").

Nationstar's complaint adequately alleges an equitable basis to potentially set aside the sale. Nationstar alleges that when MERS contacted ACS to obtain the superpriority amount, ACS refused to provide it and advised MERS that the superpriority payoff would not happen until the lender foreclosed. Thus, Nationstar's predecessor may have been unfairly lulled into not taking further steps to protect its interest in the belief that its lien was not in jeopardy. Nationstar further alleges, on information and belief, that the $7,400 the HOA paid for the property was a small fraction of the property's fair market value. Nationstar thus has alleged facts supporting both unfairness and inadequate price. Accordingly, I deny Amber Hills' motion to dismiss this portion of Nationstar's quiet title claim.

////

### E. Special Damages

Amber Hills moves to dismiss Nationstar's request for attorney's fees as special damages. Nationstar did not respond to this portion of Amber Hills' motion. Nationstar therefore consents to dismissal of its request for special damages. LR 7-2(d). Accordingly, I grant this portion of Amber Hills' motion to dismiss.

## III. CONCLUSION

IT IS THEREFORE ORDERED that defendant Amber Hills' motion to dismiss **(Dkt. #12) is GRANTED in part and DENIED in part**. I dismiss (1) Nationstar's wrongful foreclosure and breach of NRS § 116.1113 claims as time-barred, (2) those portions of Nationstar's quiet title claim based on alleged due process violations, and (3) Nationstar's request for special damages. I deny the remainder of Amber Hills' motion.

IT IS FURTHER ORDERED that plaintiff Nationstar's motion for summary judgment **(Dkt. #18) is DENIED**.

DATED THIS 31st day of March, 2016.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE